UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv16-RJC-DSC

| DEBBIE P. THOMAS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the plaintiff's motion for summary judgment (Doc. No. 10) and the defendant's motion for judgment on the pleadings (Doc. No. 12). The magistrate judge assigned to this case entered a Memorandum and Recommendation ("M&R") (Doc. No. 14), recommending that the plaintiff's motion for summary judgment be denied and the defendant's motion for judgment on the pleadings be granted. The parties filed timely objections and responses (Doc. Nos. 15 & 16), as well as supplement briefing (Doc. Nos. 18 & 19), which are now before the Court. For the reasons that follow, the Court affirms the M&R.

**I. BACKGROUND**

The plaintiff Debbie Thomas filed an application for a period of disability, Social Security disability insurance benefits, and Supplemental Security Income on April 1, 2001. Thomas alleged that she became disabled and was unable to work on November 23, 2000 as a result of a motor vehicle accident that occurred in January 2000. The plaintiff's claim was denied initially and again upon reconsideration. Thomas then requested an administrative hearing, which was held on November 8, 2007. The Court adopts and reiterates the following additional facts stated in the

M&R:

      On January 25, 2008, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled during the relevant period (Tr. 26-41). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that Plaintiff suffered from cervical radiculopathy and shoulder impingement which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also considered Plaintiff's testimony regarding her impairments' severity and resulting functional limitations, but found this testimony not to be entirely credible (Tr. 34). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light and sedentary work that does not require frequent or repetitive reaching above shoulder level, frequent climbing/balancing, bending, stooping or exposure to unprotected heights and hazards; and that is unskilled or semiskilled with no sustained skilled concentration (Tr. 32-33). The ALJ concluded that given her functional limitations, Plaintiff was not able to perform her past relevant work. The ALJ then shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff could have performed. The ALJ took testimony from a Vocational Expert ("V.E.") whose testimony was based on a hypothetical that factored in the above limitations. The V.E. testified that Plaintiff could perform work as a receptionist (DOT # 237.367-038, 8.500 jobs in North Carolina and 365,000 jobs nationally), surveillance-system monitor (DOT # 379.367-010, 900 jobs North Carolina and 48,000 jobs nationally), information clerk (DOT # 237.367-022, 1,500 jobs North Carolina and 75,000 jobs nationally), companion (DOT # 309.677-010, 3,300 jobs North Carolina and 165,000 jobs nationally), hostess (DOT # 310.137-010, 11,000 jobs North Carolina and 324,000 jobs nationally), and cashier (DOT # 211.462-010, 10,000 jobs North Carolina and 300,000 jobs nationally) (Tr. 37, see also Tr. 333-335). Accordingly, the ALJ concluded that there was substantial evidence that there were a significant number of jobs in the national economy that Plaintiff could perform and that, therefore, she was not disabled.

      Plaintiff timely requested review by the Appeals Council and offered as "new evidence" an October 25, 2007 report prepared by Dr. Michael Getter, one of Plaintiff's treating physicians. By notice dated December 14, 2008, the Appeals Council denied Plaintiff's request for further administrative review.

      Plaintiff filed the present action on January 13, 2009. On appeal, Plaintiff assigns error to the Appeals Council's decision not to remand for consideration of Dr. Getter's report, to the ALJ's evaluations of her credibility and RFC, and to his alleged failure to resolve "apparent conflicts" between the V.E.'s testimony and the Dictionary of Occupational Titles ("DOT"). See Plaintiff's "Memorandum in Support . . ." at 1-2 (document #11).

(Doc. No. 14 at 1-4).

## II.  STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983).  However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id.  Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection.  Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200.  Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the Magistrate Judge's M&R.

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of the Commissioner's final decision to: (1) whether substantial evidence supports the decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390; see Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996). The decision must be based on the record as a whole. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Fourth Circuit Court of Appeals has emphasized that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456; Smith v. Schweiker, 795 F.2d at 345; Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."). If the Commissioner's decision is supported by substantial evidence under the correct legal standard, it must be affirmed even if the reviewing court would have decided differently. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The M&R recommends that Thomas's motion for summary judgment be denied; that the Commissioner's motion for judgment on the pleadings be granted; and that the Commissioner's administrative decision be affirmed. Thomas objects to a number of the magistrate's conclusions, and her objections can be accurately restated as four contentions. First, Thomas argues that the Appeals Council should have addressed a report submitted by one of her physicians, Dr. Michael Getter, as new and material evidence of her disability. Second, Thomas argues that the ALJ failed to make a sufficient function-by-function assessment of her RFC. Third, Thomas argues that the ALJ's finding that aspects of her testimony lacked credibility was unsupported by the record. Fourth, Thomas contends that any error resulting from the ALJ's failure to discern whether the V.E.'s testimony conflicted with the DOT was not, as the magistrate determined, harmless. Each of these contentions are addressed below.

### A. Getter Report

The report prepared by Dr. Getter in October 2007 included his opinion that Thomas could lift no more than ten pounds on either an occasional or frequent basis. (Tr. 22).[1] The magistrate judge found that the Getter report was not "new and material evidence" warranting the Appeals Council's review because the report was not prepared until almost ten months after Thomas's date last insured. When a claimant seeks the Appeals Council's review of an unfavorable decision on the basis of new and material evidence,

> the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). For these purposes, evidence is "new" if it is not "cumulative or duplicative" and "material" if there is "a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted).

The M&R correctly determined that the Getter report was immaterial to Thomas's disability claim. To qualify for DIB, Thomas must prove that she became disabled prior to December 31, 2006, her date last insured. Johnson v. Barnahart, 434 F.3d 650, 655-56 (4th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1)(B) and 20 C.F.R. §§ 404.101(a) and 404.131(a)). In Johnson, the plaintiff offered a capabilities assessment prepared by her physician several months after her date last insured. Id. Although relevant to the plaintiff's claimed disabilities, the Fourth Circuit

---

[1] The Administrative Transcript ("Tr.") submitted in this case is a full and accurate copy of Thomas's claim file.

5

nevertheless held that the assessment was irrelevant to the ALJ's decision because the plaintiff had not established "that the disabilities contained in the assessment existed continuously" from her date last insured to the present, nor was there "objective medical evidence that the impairments observed" in the assessment occurred prior to her date last insured. Id. Essentially, Johnson holds that a doctor's report prepared after a claimant's date last insured is irrelevant to the claim unless evidence suggests the impairments noted in the report occurred prior to the claimant's date last insured and existed continuously through the interim period leading up to the date of the report.

Here, Thomas fails to present sufficient evidence that her impairments noted in the October 2007 Getter report existed on her date last insured. Contrary to what Thomas argues in her objections, Johnson teaches that the approximate ten-month gap between these two events renders this necessary inference far from self-evident. While the report notes that Thomas's functional capability was limited "due to shoulder impairment" (Tr. 23), nothing in the report suggests that it was meant to be retrospective in nature. Rather, the assessment purports to be a snapshot of Thomas's functional capabilities on October 25, 2007. Moreover, as the ALJ noted, Dr. Getter previously assessed Thomas in 2001 and found her only 7% permanently disabled, and as late as October 2006, Dr. Getter felt "uncomfortable" designating Thomas as more severely disabled. (Tr. 36 & 262). To the extent his October 2007 report suggests that Dr. Getter thought Thomas's condition had changed, it fails, critically, to suggest that his opinion had changed prior to December 31, 2006. Thus, the Appeals Council was under no obligation to consider the Getter report as new and material evidence, and Thomas's assignment of error on this ground is without merit.

### B. Function-by-Function RFC Assessment

Thomas next objects to the magistrate's finding that the ALJ's RFC assessment was properly performed on a function-by-function basis. To determine a claimant's disability status, an ALJ must perform a five-step sequential evaluation to determine: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant suffers from medically severe impairments lasting for a continuous period of at least twelve months; (3) whether the claimant's impairments are sufficiently severe to meet one of the listings in 20 C.F.R. 404, Subpt. P, App. 1; (4) whether a claimants RFC and past relevant work indicates disability; and (5) whether an assessment of a claimant's RFC, age, education and work experience indicates the claimant can make an adjustment to perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Under step four of this analysis, the ALJ's "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Ross v. Astrue, No. 2:06-3438, 2008 WL 4200346, at *2 (D.S.C. Sept. 11, 2008). As is required by SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, a function-by-function RFC assessment

> must address both the remaining exertional and nonexertional capabilities of the individual. . . . Exertional capacity . . . define's the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. . . . Nonexertional capacity . . . assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

1996 WL 374184, at * 5-6 (July 2, 1996).

In a detailed analysis, the ALJ addressed each of the functional capabilities outlined in SSR 96-8p. (Tr. 32-36). After evaluating the evidence contained in her claim file, the ALJ stated that he

7

"generally agree[d]" with the agency's medical consultant, who determined that Thomas could sit, stand, or walk for about six hours in a work day; could push and pull; could lift and carry fifty pounds occasionally and twenty-five pounds frequently; and had no postural, manipulative, visual, communicative or environmental limitations. (Tr. 36). However, in light of additional evidence presented at her hearing, the ALJ found that Thomas could perform occasional lifting of no more than twenty pounds, frequent lifting of no more than ten pounds, and only occasional stooping or crouching, thus making her capable of "light" exertional work only. (Id.). Further, the ALJ determined that Thomas could not perform frequent or repetitive reaching above the shoulder level; frequent climbing, balancing, bending, or exposure to unprotected heights and hazards; and, due to possible secondary effects of her pain medications, that she could only perform unskilled or semiskilled work that required no sustained concentration. (Id.).

Thomas contends that because the ALJ determined that her lifting, stooping, and crouching capacity was commensurate with that required by "light" work, he somehow failed to engage in a function-by-function assessment of her RFC. It is true that at this particular step in the ALJ's analysis, which required him to determine whether Thomas was capable of past relevant work as she actually performed it, RFC cannot be expressed solely in terms of broad exertion categories. SSR 96-8p, 1996 WL 374184, at *3; see also 20 C.F.R. § 404.1567(a)-(e) (generally categorizing exertion requirements as "sedentary," "light," "medium," "heavy," or "very heavy"). But the ALJ's mention "light" work was made in reference to its specific functional requirements, and then only in comparison to the functional limitations suggested by the agency's medical consultant. Moreover, the ALJ imposed additional limitations on Thomas's RFC beyond those contained in the definition of "light" of work. Cf. 20 C.F.R. § 404.1567(b). The ALJ's stray reference to "light" work did not negate the entirety of his RFC assessment, which was made on a function-by-function basis.

8

### C. Credibility Finding

Thomas also objects to the M&R on the ground that "an accurate reading of the evidence of record invalidates every one of the 'reasons' stated by the ALJ for finding [her] testimony not credible." (Doc. No. 15 at 3). The ALJ determined that Thomas's neck and shoulder injuries could reasonably be expected to produce the symptoms she alleged, but her testimony concerning the "intensity, persistence and limiting effects" of her symptoms was "not entirely credible." (Tr. 34). As is the case with the ALJ's ultimate decision, the Court's review is limited to whether this credibility finding is supported by substantial evidence. Johnson, 434 F.3d at 658.

Where the extent of disability depends in large part upon the credibility afforded to a claimant's testimony, regulations provide a number of criteria that an ALJ must take into account. See Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (citing 20 C.F.R. §§ 404.1529(c) and 416.929(c)). In addition to objective medical evidence, the ALJ is instructed to consider "evidence of the claimant's daily activities, specific descriptions of pain, and any medical treatment taken to alleviate it." Id. See also SSR 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *3 (specifying seven non-medical criteria relevant to a claimant's credibility).

Citing these regulations and SSR 96-7p, the ALJ identified specific evidence in the record he found inconsistent with Thomas's testimony. After her accident in January 2000, Thomas testified that she only went back to work for "about a week and a half." (Tr. 311). The ALJ noted, however, that medical records indicated she had worked that year during the months of March, August and November. (Tr. 34). Thomas testified that she was disabled from performing past relevant work as an assistant claims adjuster because that job required her to lift files weighing between forty and fifty pounds on a regular basis. (Tr. 308). However, the ALJ found this testimony

9

inconsistent with a disability report prepared by Thomas in 2001 where she stated that the job required her to lift no more than ten pounds. (Tr. 34). The ALJ discussed a number of instances where Thomas's treating physicians had noted her discontinued use of pain medications against their advice. The ALJ found Thomas's repeated failure to take pain medications as prescribed, as well as her level of activity over the past several years, inconsistent with the "disabling" pain she alleged. (Tr. 35). The ALJ also considered the fact that Thomas deferred undergoing surgical treatment for her shoulder as evidence that her symptoms were not as severe as she claimed. (Id.). After reviewing this evidence, the ALJ found Thomas's testimony to be credible evidence that she could not perform strenuous activities and repetitive overhead reaching, but not entirely credible concerning the severity of her symptoms.

In reviewing this finding made by the ALJ, the Court's role is not to render its own finding of credibility. Craig, 76 F.3d at 589 (citing Hays, 907 F.2d at 1456). It is simply to determine whether the ALJ rendered "an acceptable credibility determination based upon specific evidence in the record." Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (citing Smith v. Schweiker, 719 F.2d 723, 723 n.2 (4th Cir. 1984)). Here, the ALJ discussed specific evidence that supported his finding. And while Thomas attempts to characterize the credibility inferences that the ALJ drew from this evidence as patently unreasonable, they were not. Because the ALJ made a credibility finding that complied with applicable regulations and policy rulings and was supported by substantial evidence, the Court will not disturb this finding on review.

### D. Vocational Expert ("V.E.") Testimony

Finally, Thomas asserts that the ALJ committed reversible error by failing to discern, sua sponte, certain purported conflicts between the V.E. testimony admitted at her hearing and vocational information published in the DOT. Although she did not raise these discrepancies at her

hearing, Thomas notes that the V.E. described the occupation "Surveillance-System Monitor" as falling within the private sector, when the DOT describes it as government service. The V.E. also testified that a hypothetical individual with Thomas's RFC could perform the occupations "Companion," "Hostess," "Receptionist" and "Cashier II." Thomas argues that this testimony raises at least a possible conflict with the DOT, which states that each of these occupations requires frequent reaching.[2]

According to SSR 00-4p, <u>Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information in Disability Decisions</u>, an ALJ should rely primarily on the DOT for occupational information, but may also rely on V.E. testimony to "resolve complex vocational issues." 2000 WL 1898704, at *2 (Dec. 4, 2000). However, "[w]hen there is an apparent unresolved conflict between VE or [Vocational Specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." <u>Id.</u> This Ruling further states that an ALJ has "an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." <u>Id.</u> at *4.

Here, during Thomas's hearing, the ALJ never asked the V.E. whether his testimony conflicted with information provided in the DOT.[3] In similar circumstances, some circuits have imposed an affirmative duty on the ALJ to inquire whether latent conflicts exist between a V.E.'s testimony and the DOT. <u>See, e.g.</u>, <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 735 (7th Cir. 2006);

---

[2] <u>See</u> DOT 309.677-010 (Companion); DOT 310.317-010 (Hostess); DOT 211.462-010 (Cashier II). The DOT code given by the V.E. in reference to "Receptionist" is actually associated with "Order Clerk." These occupations, however, are quite similar, and both require frequent reaching. <u>Compare</u> DOT 237.367-038 (Receptionist) <u>with</u> DOT 249.362-026 (Order Clerk).

[3] The ALJ did, however, review the V.E.'s testimony prior to issuing a written opinion and found it consistent with the information contained in the DOT. (Tr. 38).

11

Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Hackett v. Barnhart, 395 F.3d 1168, 1174-75 (10th Cir. 2005). However, even if the ALJ erred by failing to make this inquiry, Thomas must still demonstrate such error was not harmless. See Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). This is a burden Thomas cannot meet.

As the M&R points out, whether a surveillance-system monitor is employed by the federal government or the private sector has no bearing on the functional capacity required to perform the essential duties of that job. The occupation requires no reaching whatsoever, see DOT 379.367-010, and the V.E. testified that 900 surveillance-system monitor jobs exist in North Carolina, and 48,000 such jobs exist nationally. (Tr. 333). Thomas presents no evidence suggesting these figures are inaccurate. The final step of the ALJ's sequential analysis required him to determine whether Thomas was capable of performing other jobs that exist in significant numbers in the national economy, either in her own region or in several regions throughout the United States. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1). The Fourth Circuit has noted repeatedly that as few as 110 jobs existing in a claimant's region is "significant" for purposes of this analysis. Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979); see also Koonce v. Apfel, 166 F.3d 1209 (Table), 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished) (citing Hicks); Brittain v. Sullivan, 956 F.2d 1162 (Table), 1992 WL 44817, at *4 (4th Cir. Mar. 11, 1992) (unpublished) (same). Thus, the V.E.'s testimony on this occupation alone is sufficient evidence to uphold the ALJ's finding of no disability. Even if the ALJ should have taken further steps to resolve a potential conflict created by the V.E.'s discussion of the remaining occupations, any resulting error was harmless.

**IV. CONCLUSION**

**IT IS, THEREFORE, ORDERED** that the defendant's Motion for Judgment on the Pleadings (Doc. No. 12) is **GRANTED**, and the plaintiff's Motion for Summary Judgment (Doc No. 10) is **DENIED**.

**SO ORDERED**.

Signed: September 27, 2010

Robert J. Conrad, Jr.
Chief United States District Judge